UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | | |
|---|---|---|
| TAMMY WAGNER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 11-156-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **& ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Plaintiff, Tammy Lee Wagner, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security ("Commissioner") denying Wagner's application for Supplemental Security Income ("SSI"). For the reasons set forth herein, the Court will deny Plaintiff's Motion for Summary Judgment [R. 7] and grant the Defendant Commissioner's Motion for Summary Judgment [R. 8].

**I.**

Wagner filed an application for SSI on April 14, 2004. [Transcript ("Tr.") 60-62.]. She alleges disability beginning May 1, 2002, due to shortness of breath, hand pain and numbness, difficulty walking due to back pain, fatigue, depression, and anxiety. [Tr. 68, 336-37, 340-42.]. Wagner's application was denied initially and on reconsideration and in a decision by Administrative Law Judge ("ALJ") Francis A. Molenda on June 30, 2006. [Tr. 151-57.]. The Appeals Council granted Wagner's request for review on November 17, 2007 and remanded the case for further evaluation of Wagner's subjective complaints, to obtain updated medical records,

to make specific findings regarding mental impairments, to provide an appropriate rationale for her maximum residual functional capacity ("RFC") and to obtain additional testimony from a Vocational Expert ("VE").[1] On remand, ALJ Sarah J. Miller obtained additional testimony from Wagner and VE John Williams. Wagner was 46 years old at that time. [Tr. 347.]. She had an eighth grade education and past work experience as an assembly line worker/packer. [Tr. 334, 347.].

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. §§ 404.1520, 416.920.[2] First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. §404.1520(b). Second, if a clamant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a

---

[1] The testimony of Wagner and the Vocational Expert from the first hearing is not included in the court transcript.

[2] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

2

claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

In this case, at Step 1, the ALJ found that Wagner had not engaged in substantial gainful activity since April 14, 2004, the protective application date. [Tr. 19.]. At Step 2, the ALJ found that Wagner has the following severe impairments: history of left L5-S1 hemilaminectomy with diskectomy in December, 1999 with lumbar degenerative disc disease and radiculopathy, chronic obstructive pulmonary disease ("COPD"), bilateral carpal tunnel syndrome, depression, anxiety, hypertension, hyperlipidemia, bilateral knee degenerative joint disease, and diabetes. [*Id.*]. At Step 3, the ALJ found that Wagner does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. [Tr. 20.]. At Step 4, the ALJ determined that Wagner had the residual functional capacity to perform light work with certain limitations. [Tr. 21.]. Specifically, she found that Wagner had the RFC

> to perform light work as defined in 20 C.F.R. 404.967(b) except that she is limited to 6-8 hours of sitting and 6-8 hours of standing and/or walking in an 8-hour workday. She can lift up to 10 pounds frequently and 20 pounds occasionally. She is limited to occasional climbing, balancing, stooping, kneeling, crouching, crawling, overhead reaching, pushing, pulling, and operation of foot controls. The claimant is limited to frequent fingering, feeling, and handling. She is limited to occasional work at unprotected heights and around temperature extremes.

3

[Tr. 21.][3]  The ALJ then found that the Plaintiff was unable to perform any of her past relevant work, but that there were other jobs existing in significant numbers in the national economy which she could perform. [Tr. 26.].  Accordingly, on October 20, 2008, ALJ Miller issued a second unfavorable decision, finding that Wagner was not under a disability as defined in the Social Security Act since April 14, 2004, the protective filing date of her application. [Tr. 27.].  Wagner now seeks judicial review of that decision in this Court.  The parties have filed cross-motions for summary judgment [R. 7, 8], which are now ripe for the Court's review.

## II.

### A.

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987).  "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health &*

---

[3]None of the three hypothetical questions the ALJ presented to the VE match the RFC in her decision.  Her second hypothetical question, however, is more restrictive.  It asks the VE to consider an individual of Wagner's age, education, and work experience who could frequently lift or carry up to 20 pounds and continuously lift or carry up to 10 pounds, sit a total of 6 hours in an 8-hour day (no more than 4 hours at a time), stand a total of 4 hours (no more than 2 hours at a time), and walk a total of 2 hours (no more than 1 hour at a time).  The individual could occasionally use her hands for reaching overhead or in other directions and for pushing and pulling and could frequently use her hands to handle, finger, and feel.  She could occasionally use both feet to operate foot controls, and could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl.  She could occasionally work around unprotected heights, moving machinery, humidity, dust, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations. [Tr. 350.] The VE responded that such a person could perform jobs as coal operator, motel cleaner and shipping clerk. [Tr. 349-51.]  The Plaintiff has not raised the issue on appeal and any error is harmless, since the second hypothetical is more limiting than the RFC in the decision.

*Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Id.* (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983); *Mullen*, 800 F.2d at 545.

**B.**

Wagner raises several arguments on appeal to this Court. First, she argues that the ALJ erred in determining her RFC. Second, she contends that the ALJ made an improper credibility determination. Third, she argues that the ALJ drew impermissible inferences from her non-compliance with prescribed treatment due to her inability to afford medical care. Finally, she maintains that the ALJ erred in finding that she had no "severe" impairments.

**1.**

Wagner claims that the ALJ erred by not accepting the opinions of her treating physicians, Kim Sanders, D.O., and Craig Sanders, D.O. Dr. Kim Sanders addressed a letter "To Whom It May Concern" on May 10, 2006, which she described as an "update" on her patient since her last application for disability. [Tr. 193.]. There is no previous opinion from this source in the Court transcript, however. She noted that Wagner had been "diagnosed with additional medical conditions that contribute to her not being able to work." [*Id.*]. Wagner had been diagnosed with COPD, lumbar degenerative disc disease with radiculopathy, hypertension, bilateral carpal tunnel syndrome, depression, and new onset diabetes in January, 2006. [*Id.*]. The doctor described a return of severe back and leg pain following surgery in 1999, "moderate" carpal tunnel syndrome and provided a list of medications for the other conditions. [*Id.*]. She did not give any specific functional limitations.

Dr. Craig Sanders also wrote a "To Whom It May Concern" letter on July 1, 2008, reporting that he had been her treating physician since October, 2007. [Tr. 278]. He provided a list of diagnoses and reported subjective complaints of low back and knee pain, shortness of breath, cough, and bilateral arm pain. [*Id.*]. The only objective finding he noted was a decreased range of motion due to pain. He reported that her pain medications "*could* cause drowsiness and dizziness," and that her "constant pain . . . *could* interfere with her attention and concentration while at work." [*Id.*, emphasis added].

The regulations provide that it is the Commissioner's responsibility to determine whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e)(1). A medical source's opinion that a claimant is "disabled" or "unable to work" is not considered a medical

6

opinion but is instead considered an opinion on an issue reserved to the Commissioner because it is an administrative finding that is dispositive of the case, or "that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(e).  Accordingly, the ALJ was not bound by Dr. Kim Sanders' 2006 opinion that she was not able to work.

Regarding Dr. Craig Sanders' opinion, the ALJ discounted his assessment that her constant low back and knee pain were severe enough to interfere with attention and concentration for work activity.  [Tr. 25.].  ALJ Miller did not give controlling weight to Dr. Craig Sanders' assessment that Wagner's pain was intense enough to interfere with attention and concentration for work activity.  The ALJ noted that Wagner consistently presented at the doctor's office in no apparent physical or psychological distress, was ambulatory, and had a good range of motion.  [Tr. 25, 201-02, 205-10, 216-25].  X-rays of her knees in 2007 showed no acute process [Tr. 235] and x-rays of the lumbar spine showed little change between 2005 and 2007.  [Tr. 236].  Her medication showed little change over the course of treatment, and there was no reference to a pain management clinic.

At a May, 2008 consultative examination, Dr. Ninad Karandikar noted decreased lower extremity strength and lumbar range of motion due to pain [Tr. 262-63], but an examination at an Emergency Room three months later showed a full range of motion and no motor deficit [Tr. 306-07].  The ALJ concluded that the opinion of Dr. Craig Sanders established the existence of Wagner's impairments, but the extent of the limitation on her concentration suggested by the doctor was not supported by diagnostic and clinical evidence.  [Tr. 85].  Therefore, the ALJ considered numerous factors in 20 C.F.R. § 416.927(d) in determining the weight given to the treating source opinion.  To the extent that she did not explicitly discuss the length of the

7

treatment relationship and the specialty of the treating source, the factors do not aid Wagner. Dr. Craig Sanders had been treating Wagner for approximately eight months [Tr. 278], and the few office notes from this period are not even clearly signed by Dr. Craig Sanders. [Tr. 276]. Thus, the ALJ fully complied with the applicable Regulations by providing good reasons for the weight given to Dr. Craig Sanders' opinions. The ALJ's decision in this regard is supported by substantial evidence.

Wagner asserts that the ALJ did not deal properly with the drowsiness and dizziness that Dr. Craig Sanders suggested "could" be a side effect of her medications, but the second hypothetical question to the VE contained restrictions on working around unprotected heights and moving machinery. Wagner has pointed the Court to no other limitations on her activities resulting from this possible limitation.[4]

Since neither of the treating physician opinions was entitled to controlling weight, the ALJ could reasonably have relied on the restrictions given by Dr. Karandikar.

**2.**

Wagner asserts that ALJ Miller erred in finding her subjective allegations to not be completely credible, based on inconsistencies in her allegations and testimony. Wagner concedes that the ALJ's credibility findings are entitled to great deference. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). An "individual's statements as to pain or other symptoms shall not alone be considered conclusive evidence of disability . . . ." Rather, there must be medical evidence showing the existence of a medical impairment "which could

---

[4] Wagner's argument that the ALJ could have recontacted the treating sources for clarification or explanation is without merit. Such a duty is not triggered because, *inter alia*, this is not a case where the basis for the treating physician opinion is unclear. Social Security Ruling 96-5p, 1996 WL 374183 at *1 (July 2, 1996), quoted in *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 273 (6th Cir. 2010).

8

reasonably be expected to produce pain or the other symptoms alleged," and which, when considered with all the other evidence, "would lead to a conclusion that the individual is under a disability." 42 U.S.C. § 423(d)(5)(A). *See also* 20 C.F.R. § 416.929.

In *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847 (6th Cir. 1986), the Sixth Circuit set out a two-part test for evaluating subjective complaints of pain.

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

801 F.2d at 853. Here, the ALJ cited the two-part *Duncan* test and specifically found that while Wagner's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements regarding the intensity, persistence, and limiting effects of the symptoms were not fully credible. [Tr. 22.]. She discussed Wagner's treatment history at length, noting that she had reported a 99 percent improvement in low back and leg pain after her 1999 surgery [Tr. 22, 117] and was still reporting tremendous improvement and taking no medication for it in July, 2004 after her SSI application. [Tr. 22, 135]. While a consultative evaluation by Dr. Karandikar in May, 2008 did show pain and limitation of motion, he still opined that she could lift, sit, stand, walk, and perform postural activities consistent with the second hypothetical question [Tr. 22-3, 262-63], and the only finding on a subsequent ER visit for back pain was paraspinal muscle tenderness. [Tr. 24, 307].

Regarding Wagner's breathing problems, she admitted at the administrative hearing that she had continued to smoke until December, 2007. [Tr. 339-40]. The Sixth Circuit has noted

9

that it is "difficult to envision a severe environment restriction imposed by a pulmonary condition when the claimant was a heavy smoker." *Mullins v. Sec'y of Health and Human Servs.*, 836 F.2d 980, 985 (6th Cir. 1987). The *Mullins* court also drew a negative inference from the failure of a treating source to place an environmental restriction on their patient, *id.*, as is the case here. In any event, Wagner's most recent pulmonary function test, obtained in May, 2008, showed only mild restrictive lung disease [Tr. 263] and the second hypothetical question provided restrictions on dust, fumes, humidity, temperature extremes and pulmonary irritants generally. [Tr. 350-51]. Wagner has not suggested how she should be more limited.

Concerning Wagner's diabetes, ALJ Miller correctly noted that no examinations showed evidence of end organ damage such as neuropathy or retinopathy, despite initial poor control. [Tr. 24-25, 233, 251]. Objective EMG/NCV testing confirmed carpal tunnel syndrome, but physical examinations actually showed no reduction in grip, sensation, or manipulative ability, and there was no indication that she had related her allegation of dropping objects to her physicians. [Tr. 24, 136-36, 181, 262-64.]. Nor did she establish any limitations due to high blood pressure and high cholesterol. [Tr. 25.]. Therefore, the ALJ's determination that Wagner's subjective complaints were not fully credible is supported by substantial evidence.

### 3.

Wagner argues with little elaboration that the ALJ should not have criticized her non-compliance with treatment recommendations and irregular medication usage because she was unable to afford treatment. ALJ Miller did suggest that her diabetes might have been poorly controlled because of her reliance on medication samples, but she also mentioned questionable dietary compliance. [Tr. 24]. Ultimately, the ALJ based her conclusions not on irregular

treatment or lack of compliance, but on lack of evidence of diabetic complications. [Tr. 25]. She noted not that Wagner had failed to obtain orthopedic or surgical intervention for her back, but that there had been no referral for pain management or other treatment. [*Id.*]. Thus, this argument is without merit.

### 4.

Wagner's fourth and final argument is that the ALJ erred in finding no "severe" impairments. As previously discussed, the ALJ found numerous "severe" impairments. Wagner appends an unrelated argument under this heading concerning her inability to perform sedentary level work due to limited use of her hands. However, as previously described, there is no objective evidence of such a limitation. These arguments are also without merit.

### III.

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. The Plaintiff's Motion for Summary Judgment [R. 7] is **DENIED**;

2. The Defendant's Motion for Summary Judgment [R. 8] is **GRANTED**; and,

3. **JUDGMENT** in favor of the Defendant will be entered contemporaneously herewith.

This the 10th day of August, 2012.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge